No. 84-193

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

MANUEL CASTILLO, JR., and DEBORAH
CASTILLO,

Plaintiff and Respondent,

-vs-

JAKE FRANKS and MYRLE M. FRANKS,

Defendants and Appellants.

---

APPEAL FROM: District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Byron Robb, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Huppert & Swindlehurst, Livingston, Montana

For Respondent:

Berg, Coil, Stokes & Tollefsen, Bozeman, Montana

---

Submitted on Briefs: August 30, 1984

Decided: November 1, 1984

Filed: NOV - 1 1984

*Ethel M. Harrison*

---
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Jake and Myrle Franks appeal from a judgment against them entered in the District Court, Sixth Judicial District, Park County, in favor of the Castillos and the Cotants. With minor modifications, we affirm the judgment.

Issues raised by the Franks include these: (1) that the plaintiffs' suits are barred by the statute of limitations; (2) that plaintiffs' claims are barred by latches; (3) that the awards of punitive damages are in error; (4) that damages for loss of hay crops are improper; and (5) that the court erred in awarding prejudgment interest.

In 1976, Jake and Myrle Franks purchased 160 acres of land in the Shields River Valley north of Livingston, Montana, from Delbert Kunneman. In the conveyances, Kunneman transferred to the Franks 230 miner's inches of water from the McNiven ditch appropriation dated August 14, 1893. Water flows from the Shields River through McNiven ditch to the Franks' property. Another ditch crossed the land purchased by the Franks called the Grannis ditch. The water in the separate ditches emanate from two different water rights.

Franks subdivided the 230 acre tract. They sold a 20 acre tract to Manuel Castillo, Jr. and his wife Deborah, in June 1979 by contract and an adjacent 9.114 acre tract to Garry Cotant and Sharyl Cotant by deed on November 8, 1979. The conveying instruments do not contain a specific grant of water rights. Grannis ditch crossed both the Castillo and Cotant lands, and had formerly been used to irrigate those tracts by Kunneman. McNiven ditch is located to the west of

- 2 -

the Castillo and Cotant properties and has no connecting laterals or ditches to Grannis ditch or to the plaintiffs' property. A diagram of the ditches appears in our opinion reported in Castillo v. Kunneman (1982), 197 Mont. 190, 194, 642 P.2d 1019, 1022.

During the 1977 and 1978 irrigating seasons, Kunneman allowed the Castillos to take water from the Grannis ditch to irrigate his hay crop. In June 1979, Kunneman blocked the Grannis ditch and cut off water to the Castillos. At this time, Castillo learned that Kunneman claimed all the water in Grannis ditch. In May 1979, Franks, Castillos, and other neighboring landowners met to discuss forming McNiven Ditch Users Association. Testimony is conflicting regarding what actually transpired at the meetings. Castillos claim that they were willing to accept water from McNiven ditch via a lateral which was to be constructed, but the Castillos maintained they had a right to Grannis ditch water. A dispute broke out among the landowners over who would pay how much for repairs to McNiven ditch and the construction of the Castillo lateral. As a result, no lateral was built.

Cotants purchased their land in the fall of 1979. The District Court found that Franks had led Cotants to believe they were buying land that would be irrigated by Grannis ditch.

Franks had represented both to the Castillos and the Cotants that he owned the water rights to Grannis ditch before conveying lands to them. From and after the summer of 1979, however, Kunneman blocked the water from flowing through the Grannis ditch, depriving the Castillos' and Cotants' lands of irrigation water from that ditch. As a result on July 14, 1980, plaintiffs filed suit against

Kunneman seeking to compel Kunneman to release water into the Grannis ditch to which they deemed themselves entitled. The District Court found on September 9, 1980, that Kunneman had reserved the water right to Grannis ditch in the conveyance given to the Franks, and that the Castillos and Cotants, as successors in interest to the Franks, had no rights in the Grannis ditch water. That decision was appealed to this Court, and in Castillo v. Kunneman (1982), 197 Mont. 190, 642 P.2d 1019, the water rights on Grannis ditch were settled in favor of Kunneman and against the plaintiffs Castillos and Cotants.

On June 23, 1982, both Castillos and Cotants filed separate suits against Franks. Castillos alleged one count of breach of contract for the sale of land and one count of fraud in their complaint. Cotants similarly alleged fraud and also alleged breach of warranty related to their warranty deed. In substance, both counts in the complaints arise from the allegation that the Franks told both plaintiffs that they were entitled to draw 1.75 miner's inches of water per acre from Grannis ditch for irrigation purposes before and after they purchased their tracts of land. The promise was alleged to be both a misrepresentation of a material fact inducing the purchase of land and an enforceable term in the contracts. The cases were tried to the court sitting without a jury and a decision was rendered on November 30, 1983. The District Court found that the Franks had breached the land contract with the Castillos and had breached the warranty contained in the deed to Cotants. The Franks were also found to be liable to both plaintiffs for misrepresentation. Damages were awarded to Castillos on the contract claim as follows: $2,500.00 for diminution in land value, $4,293.00

- 4 -

for loss of crops covering the years 1979 through 1981, plus prejudgment interest of 6% and post-judgment interest of 10%, punitive damages of $1,500 and attorney fees. Cotants were awarded $3,500.00 in punitive damages on the fraud claim, and $1,139.25 for diminution of land value, and $922.50 for hay crop loss with prejudgment interest of 6% and post-judgment interest of 10%.

The Franks appeal the judgment in favor of the Castillos and the Cotants to this Court.

STATUTE OF LIMITATIONS

Section 27-2-203, MCA, provides:

"The period prescribed for the commencement of an action for relief on the ground of fraud or mistake is within two years, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."

The Franks contend that under section 27-2-203, MCA, the claims of the plaintiffs against them for fraudulent inducement to enter into the land purchases is barred by the statute. The Castillos and Cotants answer that they did not discover the facts constituting the Franks' fraud until later, and their suit was commenced within the time allowed by the statute of limitation.

The District Court made findings on the discovery of the facts relating to fraud or false representations. It found that before plaintiffs purchased the lands, Franks had told them they would receive 1.78 miner's inches per acre through the Grannis ditch, pointed out to the Castillos the Grannis ditch and how to take the water out of the ditch into a lateral for the Castillos tract. It found the Castillos used the Grannis ditch to irrigate in 1977 and 1978 and grew good hay crops using the irrigation water. In 1979, Kunneman

- 5 -

blocked the Grannis ditch and would not permit water for irrigation to be transferred to the Castillo lands from that ditch. The Castillos complained to Franks who told him to go open the ditch as Kunneman had no right to it. Franks offered money to help fight Kunneman on the matter.

The McNiven Ditch Users Association never was completed. It appears part of the reason, from the findings of the court, was that the Castillos were not getting along with their neighbors.

As to Cotants, they paid cash for their acreage, and received a deed which did not convey specific water rights, but only the general appurtenances, "water rights and water ditches, if any." The court found that both the Castillos and Cotants relied on Jake Franks' representations that the lands they purchased were irrigated from the Grannis ditch and on the basis of his representations, filed suit in the District Court as aforesaid against Kunneman for the purpose of settling their right to Grannis ditch water. The court found that the statements of representation made by Jake Franks to Castillos and Cotants respecting the water for the Grannis ditch were false or were known by Franks to be false or were made in ignorance or wreckless disregard of their truth for the purpose of inducing the plaintiffs to purchase their respective tracts; that Castillos and Cotants believed and relied upon those statements of Jake Franks and were thereby damaged; that Castillos and Franks could not be certain of the truth or falsity of the representations made to them by Jake Franks until the final decision of this Court aforesaid, rendered on March 3, 1982; that Franks had been informed of the reservation of all the Grannis ditch waters by Kunneman when Franks purchased the 230 acres but that

Franks had failed to reveal the same to either the Castillos or Cotants. The District Court, therefore, concluded that the time for statute of limitations began to accrue on March 3, 1982.

Section 27-2-203, MCA, the statute of limitations pertaining to the discovery of fraud applies, of course, when the action brought by the plaintiff sounds in tort. An action sounding in contract is not barred until a period of 8 years has elapsed. Section 27-2-202, MCA. In these cases, the plaintiffs each set forth in their complaints claims based on contract and in tort. Such alternative, even inconsistent, pleading is permitted by Rule 8(a), M.R.Civ.P.

Under Rule 8, it is not necessary to set out the legal theory under which the claim is based. Our Rule 54(c), M.R.Civ.P., states that the parties shall be granted any relief to which they are entitled even though they have not demanded it. It has been held with respect to the federal rules, from which we draw up our procedural rules, that under the liberal rules of procedure, a plaintiff is entitled to recover, not on the basis of his allegations of damages, or of his theory of damages, but on the basis of the facts as to damages shown in the record. Nester v. Western Union Telegraph Company (S.D. Cal. 1938), 25 F.Supp. 478.

We have held, however, in Montana, that where the gravamen of the action is strictly ex contractu or ex delicto, the statute of limitations applicable must necessarily be in conformity with the basis of the action. Quitmeyer v. Theroux (1964), 144 Mont. 302, 395 P.2d 695. In this case, the District Court, by its findings and conclusions covered all the bases. It found and concluded that in failing to provide Grannis ditch water to the

Castillos and the Cotants, Franks breached their contractual agreements with the plaintiffs. But the District Court also found that the false promises of Grannis ditch water induced the Castillos and the Cotants to purchase the lands and that the Castillos and the Cotants did not discover the true facts respecting the false promises until March 3, 1982. Thus, whether we regard the causes of action brought by the Castillos and the Cotants as based on contract or based on tort, their respective actions are within the applicable statutes of limitations, either eight years for contract or two years for tort. Findings of fact made by a District Court come to us with a high quality of rectitude. Such findings are not to be overturned by us unless they are clearly erroneous, Rule 52(a), M.R.Civ.P., which is not the case here.

Thus, the damages awarded by the District Court for diminution of value of the lands and for crop loss are equally recoverable whether the gravamen of the causes of action is considered to be contract or tort. For breach of contract, the measure of damages is the amount which will compensate the party aggrieved for all the detriment proximately caused by the breach or in the ordinary course of things likely to result therefrom. Section 27-1-311, MCA. The measure of damages for a tort is the amount which will compensate for all the detriment proximately caused by the tort, whether it could have been anticipated or not. Section 27-1-317, MCA.

Punitive or exemplary damages, however, may be awarded only in tort cases (with certain exceptions not here involved), section 27-1-221, MCA. Thus the awards of punitive damages in these causes, if otherwise proper,

because of the findings of the District Court of false representations which induced the purchase of the lands are recoverable since under Rule 54(c), M.R.Civ.P., every final judgment shall grant the relief in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.

We hold, therefore, that the claims of the Castillos and the Cotants are not barred by any statute of limitations, and the awards of damages are proper.

LACHES

The Franks base their argument under laches on the suit that the Castillos and the Cotants brought against Kunneman. Franks contends that with respect to the Castillos, Franks tried to solve the problem by building a lateral ditch from the McNiven ditch to the Castillo tracts and that Franks enlisted the help of Castillos' neighbors for the requisite easements and assistance in construction of the ditch. Nonetheless, Franks contends Castillos refused to cooperate with their neighbors and no ditch was constructed.

As to Cotants, Franks testified he was never approached by Cotants in any respect for water until Cotants sued Franks in 1982. Franks testified he would have secured Cotants' irrigation water regardless of the cost and would have bought water rights from Kunneman for Cotants. Franks contends that because of the Kunneman suit, Kunneman is alienated, and there is no possibility now of buying water for either the Castillos or Cotants from Kunneman.

Franks contentions are not within the concept of laches. There is no statutory defense of laches in Montana. It is a creature of equity and means negligence in the assertion of a right. It exists where there has been a delay of such a

duration as to render enforcement of the asserted right inequitable. Montana Power Company v. Park Electric Co-op (1962), 140 Mont. 293, 371 P.2d 1. The purpose of laches is to discourage stale demands by the court refusing to interfere where there has been gross laches in prosecuting rights, or where long acquiescence in assertion of adverse rights has occurred. Akey v. Great Western Building and Loan Association (1940), 110 Mont. 528, 104 P.2d 10.

The principle of laches against the Castillos and the Cotants does not apply here. They acted reasonably promptly to sue Kunneman over the Grannis ditch rights, at a time when the Franks were contending that plaintiffs had such rights. The Grannis ditch argument was foreclosed by our decision on March 3, 1982. The complaint of the Castillos and Cotants against Franks was filed on June 23, 1982. Their demands are not stale, they have not been lax in prosecuting adverse rights nor have they acquiesced in the assertion of their rights in this litigation.

PUNITIVE DAMAGES

The District Court found that Franks acted with oppression and fraud toward the plaintiffs in making false representations but thereafter showed good faith toward Castillos when he sought to mitigate their damages by attempting to arrange an alternate source of water; but that Franks made no such effort toward the Cotants. The court, therefore, awarded punitive damages to the Castillos in the sum of $1,500 and to the Cotants in the sum of $3,500.

The District Court found fraud and malice in the actions of Franks toward the plaintiffs, and its findings to that effect have support in the record as we have shown in the earlier recitation of facts. Rule 52(a), M.R.Civ.P.,

- 10 -

compels us to sustain the District Court's award of punitive damages on the grounds that the findings of fact are not clearly erroneous.

The District Court apparently differentiated its awards of damages based on the fact that the Franks made some attempt to mitigate Castillos damages, but not Cotants.

The amount of punitive damages to be awarded is within the sound discretion of the trier of fact. Here no issue is raised as to the punitive damages being so excessive as to shock the judicial conscience.

HAY CROP DAMAGES

The Franks contend that the award for damages for loss of hay crops was improper in that the court also awarded damages for loss through diminution of value for the respective tracts of the Castillos and the Cotants, and in any event, the hay crop damages were speculative.

We have already referred to the statutory provision for measure of damages. Section 27-1-311, MCA. Generally the measure of damages for a breach of contract are the loss of value to the injured party of the other parties' performance caused by their failure or deficiency, plus any other incidental or consequential loss caused by the breach, less any cost or other loss that the injured party has avoided by not having to perform. Restatement (Second) Contracts, § 347 (1981); General Insurance Company v. City of Colorado Springs (Colo. 1981), 638 P.2d 752. This is sometimes described as the "benefit of the bargain" rule. The proper objective of an award of damages for wrongful breach of contract is to place the party wronged in as good a position as if the contract had been performed. Stensvad v. Miner's and

- 11 -

Merchant's Bank of Roundup (1982), 196 Mont. 193, 640 P.2d 1303, cert.den. 103 S.Ct. 69.

The District Court found that the plaintiffs suffered damages by reason of the breach of contract by Franks in amounts equal to the difference in the value of their respective lands with and without water for irrigation in the sum of $2,500 for the Castillos and $1,139.25 for the Cotants. In effect, these awards represent the difference in value between what the Castillos and the Cotants thought they were buying, and what they got from the Franks.

Ordinarily an award for damages based on the difference in value between the promise and the performance includes in the case of land contract items such as the difference in crop values actually obtained from crop values that would have been obtained had the conveyance been as promised. This Court has recognized that in certain instances, damages for crop loss may be granted in addition to damages for the diminished value of the lands due to the unperformed promise. In Healy v. Ginoff (1923), 69 Mont. 116, 220 P. 539, this Court allowed the recovery of losses for crops until the purchasers were in possession of full knowledge of the facts. Applying that rule here, it was proper for the District Court to consider loss of hay crops for the years 1979 through 1982 as the District Court did.

Franks also objected that the damages awarded for hay crop loss are speculative. They point out the conflicting opinions of the various witnesses who testified about the value of hay for the years in question, the amount of production of hay that could be expected from the lands, the cost of planting, cultivating and putting up the hay, and the actual production of the hay on the lands. We have held with

- 12 -

respect to loss of profits that once liability is shown, that is, the certainty that the damages are caused by the breach, then loss of profits on a reasonable basis of computation and the best evidence available under the circumstances will support a reasonably close estimate of the loss of profits by a District Court. <u>Stensvad</u>, supra, 196 Mont. at 206, 640 P.2d at 1310. If it is reasonably certain that damages were sustained by the wrongful act or breach of the defendant, then reasonable damages rationally supported in the evidence will be upheld. Here the District Court clearly set forth the basis upon which it found the crop loss, based on the market value of hay crops and cost of production. We uphold the damages found by the District Court for crop loss.

PREJUDGMENT INTEREST

The District Court awarded prejudgment interest on the hay crop losses for the respective years 1979, 1980, 1981 and 1982. We determine that the award of prejudgment interest in these instances was improper.

The right to interest is governed by section 27-1-211, MCA, which states:

> "<u>Right to interest</u>. Every person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover which is vested upon him on a particular day is entitled also to recover interest thereon from that day during such time as the debtor is prevented by law or by the act of the creditor from paying the debt."

In this case, the damages for loss of hay crops were uncertain until the court made its determination as to the amount. There was much conflicting evidence in the record as to the value of the hay crop loss sustained by each of the plaintiffs. The damages, therefore, were not certain or capable of being made certain by calculation on a particular

day prior to the determination made by the District Court. Section 27-1-211, supra. For that reason, we reverse the awards of prejudgment interest granted here by the District Court. Interest, of course, is recoverable on the judgments once the judgment has been entered.

CONCLUSION

The judgment of the District Court is affirmed on all issues except for the award of prejudgment interest on the hay crop loss. As to that item, the cause is remanded to the District Court for modification of the judgment in accordance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

- 14 -