No. 88-283

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

NORTHWEST PLATING CO., a corporation,
and K. H. HOEN,

              Plaintiff and Appellant,

     -vs-

IRENE H. HOFFMAN, in her capacity as
Personal Representative of the Estate
of Ralph MacLaren Hoffman, THE ESTATE
OF RALPH MACLAREN HOFFMAN and MURRAY
MANUFACTURING COMPANY,

              Defendants, Respondents and
              Cross-Appellants.

---

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable G. Todd Baugh, District Judge.

COUNSEL OF RECORD:

       For Appellant:

              Pierre L. Bacheller, Billings, Montana

       For Respondent:

              Bruce E. Lee, Billings, Montana

---

Submitted on Briefs: Sept. 23, 1988

Decided:  October 20, 1988

Filed:

FILED
'88 OCT 20 PM 3 51
CLERK
MONTANA SUPREME COURT

_____
              Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Plaintiffs appeal a judgment entered in the Thirteenth Judicial District, Yellowstone County, and defendants cross-appeal.

Plaintiffs are K. H. Hoen and Northwest Plating (Northwest), a corporation owned in equal shares by Hoen and defendant Ralph Hoffman, deceased. Defendants are Irene Hoffman as personal representative for the estate of Ralph Hoffman, her deceased husband, and Murray Manufacturing Co., a business solely owned by decedent Ralph Hoffman. Hoen and Hoffman incorporated their business (Northwest) in 1958 and were the only shareholders in the corporation until January 1984 when Hoffman died. This cases arises out of their business relationship and the settling of Hoffman's estate.

The issues on appeal and cross-appeal are numerous:

1. Did the District Court abuse its discretion in finding that Hoffman converted corporate money?

2. If not, then did the District Court err in applying a three-year statute of limitations for conversion, when plaintiffs urged that their claim was for breach of a verbal agreement bearing a five-year statute and defendants urged the proper limitation for conversion was two years?

3. If the conversion finding is proper, are Hoen's claims still barred by his acquiescence and laches?

4. Did the District Court err in finding that plaintiff Hoen's promissory note was cancelled?

5. Did the District Court err in determining the buyout price for a deceased shareholder in Northwest Plating Company on January 1, 1984, was $55,000 rather than the alleged $28,000?

6. Did the District Court err in failing to find an oral modification of the written sublease agreement, and if

2

not, are Hoen's claims to recover the excess rent barred, at least in part, by the two-year statute of limitations?

We affirm in part and reverse in part.

Hoen and Hoffman met in the late 1940s and became close friends. In 1949 they formed a business partnership and went into the industrial hard chrome plating business in Billings, Montana. The year before that, Hoffman's business, Murray Manufacturing Company (MMC) leased a parcel of property from Northwestern Improvement Company, a subsidiary of Northern Pacific Railroad. Hoen and Hoffman located their new business on that property.

In 1958 Hoen moved to Salt Lake City, Utah. At that time, Northwest was incorporated and a shareholder's agreement was signed by both parties designating Hoffman as business manager. Likewise, an employment contract was drawn up detailing Hoffman's powers, duties and his compensation for performance of his duties. Hoffman's complete compensation as outlined in the contract was to be a salary, car and airplane lease payments and reimbursement for fuel and oil expenses incurred in business travel.

Hoffman's duties included sole managerial control over Northwest, being responsible for the day-to-day operation, purchases, financial affairs, bookkeeping, and records. Hoffman was only limited in carrying out these duties in that any purchase over $10,000 required prior director's approval.

About this same time, Northwest began leasing its space from MMC as a sublessee on the primary lease from Northern Pacific. Hoffman and Hoen reached an agreement whereby Northwest would pay to MMC one-half of the rent as established by Northern Pacific.

Hoffman died January 1, 1984, from injuries sustained in a plane crash.

Hoen discovered after Hoffman's death that in managing the business, he caused Northwest to pay the entire 100 percent of the rent on the MMC lease to Northern Pacific. Hoen made a claim with Hoffman's estate for that portion of the rent allegedly wrongfully paid.

Hoen also made claims for numerous expenditures by Hoffman during the course of business which were of a personal nature. These included among others, payments for club dues, flowers and magazine subscriptions. The rent claim, along with Hoen's other claims against the estate, were denied by Irene Hoffman. Litigation of the matter ensued and a bench trial was had August 3, 1987. The District Court found Hoffman to have converted corporate money in the amount of $22,865.34 in personal expenditures and $3,925.00 in excess lease money paid. That amount for excess rent was also subject to prejudgment interest. Both parties appeal this award and dispute the applicable statute of limitations.

Additionally, testimony was had at trial that in April 1981 Hoffman executed a promissory demand note in favor of Hoen in the amount of $9,087.54. The original note is lost. Its whereabouts were disputed at trial, and no one was able to produce it. Hoen testified that it should have been placed with Northwest's attorney, Sid Kurth, for safekeeping and that is where Hoen assumed it to be.

Kurth testified that he did not have the note, that he could not locate the Northwest file, and that he had no recollection of the note being placed in his possession.

Hoen came to trial with a carbon copy of the note which was signed as an original. However, the signature had been physically cut off with scissors. Hoen testified that he intentionally cut off Hoffman's signature so that Hoen's wife could not unfairly make demand on Hoffman. Hoen further testified that since he believed the original to be with

4

Kurth, he did not think that removing the signature on his copy would affect its enforceability.

The District Court refused to enforce the note. It found the note to be cancelled by Hoen's intentional mutilation of the document by removing the signature of the party to be charged. Hoen assigns this as error.

Lastly, Hoen disputes the correct dollar amount of a buyout of a deceased shareholder's stock in the Northwest company. The buyout price, which changed over the years, was based on several documents. The court found the $55,000 price stated in the 1976 written agreement controlling. Plaintiff assigns that decision as error. This Court affirms on all but one issue.

A District Court's ruling on these issues will not be overturned when it is based on substantial credible evidence and is not an abuse of discretion. Marriage of Watson (Mont. 1987), 739 P.2d 951, 44 St.Rep. 1167. Substantial evidence is any which a reasonable mind would accept as adequate to support a conclusion. State v. Lamb (1982), 198 Mont. 323, 696 P.2d 516.

I. CONVERSION

The District Court specifically found that Hoffman's compensation was limited to that which was outlined above in the employment contract. Many of Hoffman's expenditures were scrutinized after Hoen received the corporate books. Hoffman's estate urged that they were all legitimate business expenditures. Hoen argued that they were compensation in excess of that authorized by Hoffman's employment agreement and constituted a breach of contract. The court found the purchases to be personal in nature and a conversion of Northwest's assets. We agree.

5

Testimony at trial revealed that one of the questioned expenditures was Hoffman's authorization for Northwest to pay all of his health insurance costs. The largest bill was for accumulated airplane repair, fuel and hangar rental. Although their agreement authorized Northwest to lease the airplane from Hoffman, he continued to use the plane for his own personal and MMC use as well. He then reimbursed himself with Northwest money for the fuel, repair and storage costs. These are clearly unauthorized corporate expenditures for personal expenses. They were made without director's approval and without Hoen's knowledge or consent.

The District Court properly found these expenditures to be a conversion and had ample evidence on which to base such a finding.

The court awarded compensation for Hoen's creditor's claim against the estate for these expenditures for the years 1981, 1982 and 1983, but barred earlier claims. We disagree with the award for the year 1981 and reverse on this issue.

The District Court made a specific finding of conversion. However, conversion is a tort bearing a two-year statute of limitations. Thus, the claim for damages in the year 1981 is barred, and it was reversible error for the judge to allow it. We reverse on this issue and remand for a new determination of damages allowing only for the years 1982 and 1983.

Mrs. Hoffman additionally asserts that these claims are barred by laches or by Hoen's acquiescence. We disagree.

The equitable doctrine of laches was fully explained by this Court in Schantz v. Minnow (1966), 147 Mont. 228, 411 P.2d 362, 372-373. See also Clayton v. Atlantic Richfield Company (Mont. 1986), 717 P.2d 558, 561, 43 St.Rep. 717, 720. It bars recovery to one who knows of an injury done to him but delays asserting his rights so as to prejudice or injure

6

the other party. It is based on the concept of knowledge and delay. Laches does not apply in this case. There was no evidence that Hoen had knowledge of any of these unauthorized expenditures prior to Hoffman's death. Upon learning of them, Hoen made a detailed creditor's claim with Hoffman's estate within the allotted time, thus defeating the element of delay. Likewise, Hoen could not have acquiesced to conduct of which he had no knowledge. Based on the trial record, Mrs. Hoffman's assertion of laches and acquiescence must fail.

II. THE PROMISSORY NOTE

The District Court found that the promissory note produced at trial by Hoen was cancelled as a matter of law. We agree. Hoen testified that he produced a carbon copy of the original; however, the copy was also signed in ink. The copy had Hoffman's signature physically cut off the bottom of the note. It was conceded by all that the original was lost. Mrs. Hoffman testified that she believed her husband did not owe Hoen any money on the note. The court took this as some evidence tending to prove that Hoffman's signature was removed as evidence of cancellation of the debt. Further, Hoen offered no explanation of his actions in mutilating the note. He stated that he did not want his wife to make an unfair demand on Hoffman when Hoen himself had been lenient with Hoffman. However, we fail to see how one can make an unfair demand on a demand note.

Sections 28-2-1702 and -1703, MCA, control. These sections provide that where a contract or a signature thereon has been destroyed intentionally, a cancellation will be effected. Such is the case here. Had Hoen fully expected to make demand on his note and be paid, he should not have cut off the operative signature from his note. Hoen fails to

7

convince this Court that the District Court's ruling on this issue was an abuse of discretion.

III. THE BUYOUT

Originally, the buyout price agreed on by Hoen and Hoffman in paragraph 15 of the 1958 shareholder agreement was $28,000. However, in September of 1967, Northwest purchased a life insurance policy for each Hoen and Hoffman. This key man insurance policy purchased from Western Life Insurance Company had a face value of $25,000.

The proceeds of the policy were dedicated to the buyout of a deceased shareholder by written agreement in March 1972. The agreement stated that the $25,000 proceeds would be payment in full for a buyout.

In February 1976, Northwest purchased an additional policy from Equitable Life Assurance Society. The policy insured the lives of both Hoen and Hoffman in the amount of $30,000.

In March 1976, Hoen and Hoffman signed an agreement dedicating both policies to the buyout. Thus, $55,000 would be payment in full for a deceased interest in Northwest.

Then, on April 27, 1981, Hoen and Hoffman met and added another addendum to their 1958 shareholders' agreement. In paragraph 15 during the discussion of a buyout the number $28,000 is handwritten in and initialed. Hoen asserted at trial that this is substantial credible evidence on which to base a finding that they both intended to reduce the buyout price to its 1958 original cost of $28,000, thereby rescinding all previous agreements to the contrary. We disagree.

Nowhere in the 1981 document are any previous documents rescinded or even mentioned. Further, the additional $30,000 policy was never cancelled or otherwise dedicated. Lastly, at trial, Mrs. Hoffman testified that Hoen advanced her

8

$5,500 as 10 percent of the buyout and later paid the balance of $49,500. No formal protest came from Hoen until two years later when it was mentioned in his amended complaint.

The evidence is confused even further by Hoen's trial testimony that he wanted the balance of the $55,000 paid into the court pending the outcome of the dispute but that his lawyer inadvertently paid it over directly to Mrs. Hoffman.

The District Court found that the buyout was $55,000 and the 1976 agreement was not rescinded. Based on the foregoing evidence, Hoen fails to persuade us that the lower court's ruling was an abuse of discretion and not based on substantial credible evidence. Absent such a showing by the appellant, this Court will defer to the judgment of the District Court judge who heard the testimony and sat in a better position to determine the credibility of the evidence.

IV. THE SUBLEASE AGREEMENT

Mrs. Hoffman asserted an oral modification to the sublease agreement. Originally, Northwest was required to pay 50 percent of the lease payments of MMC to Northern Pacific. However, Mrs. Hoffman asserts that it was within Hoffman's corporate discretion to modify the lease, even if he was negotiating with himself as lessor and sublessee, and that an oral modification would be valid. We are not persuaded by this argument; nor can we see that was what Hoffman had in mind when he caused Northwest to pay the full MMC lease. His conduct bears that out.

He made no corporate minutes or records of his change, nor did he tell Hoen about the change. Rather, without following any corporate procedure, Hoffman made unauthorized expenditures by unilaterally causing Northwest to pay his full obligation under the MMC lease from 1976 through 1983. The court properly found a breach of an indefinite term

9

sublease agreement and awarded a 50 percent refund on the lease payments for those years plus prejudgment interest.

For the foregoing reasons, we find that the District Court did not err in deciding the issues raised on appeal and cross-appeal with the exception of the correct statute of limitations for conversion.

We remand for a new determination of damages for conversion consistent with this opinion and affirm on all other issues.

Chief Justice

We concur:

Justices